# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30324

United States Court of Appeals
Fifth Circuit

**FILED**

February 19, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

STEPHANIE BEVON, also known as Stephanie Hill,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CR-168

Before KING, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:*

Stephanie Bevon challenges the portion of the district court's restitution order that requires her to pay $2,300 to HSBC Bank USA. For the following reasons, we VACATE the restitution award to HSBC Bank USA, and AFFIRM all other aspects of the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30324

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 2013, Appellant-Defendant Stephanie Bevon was charged in a criminal information with mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and bank fraud, in violation of 18 U.S.C. § 1344.  Bevon waived her right to be charged by an indictment, and, pursuant to a written plea agreement, pleaded guilty to all three counts in the information.  Bevon waived her right to appeal or collaterally challenge her conviction or sentence, including any order of restitution imposed "under any applicable restitution statute," but she reserved the right to appeal "any sentence imposed in excess of the statutory maximum."

The factual basis and presentence report ("PSR") described Bevon's conduct as follows.  Bevon was hired by Rebowe and Company, an accounting firm, in January 2008 to serve as Phillip Rebowe's administrative assistant. Rebowe is a senior partner at Rebowe and Company, where he manages several of the company's accounts.  Bevon's duties included retrieving mail for the company and distributing the mail to other employees.

On July 10, 2008, Bevon applied for a Discover credit card using Rebowe's personal identifying information.  In November 2008, a Discover credit card statement was sent to Rebowe's office.  Rebowe knew that he had not applied for a Discover credit card; however the statement showed that he was late on payments.  After speaking with a representative in Discover's fraud department, Rebowe realized that the card was opened without his authorization or consent.  The credit card had a balance of $3,500.  The fraudulent opening of the Discover credit card account formed the basis of the mail fraud count.

On October 7, 2008, Bevon made a wire transfer in the amount of $72,329.77 from an account at Omni Bank belonging to one of Rebowe and

2

No. 14-30324

Company's clients to a legal trust account by forging Rebowe's signature. The legal trust account belonged to Seth Bloom, an attorney who had represented Bevon in a prior theft-related criminal charge in Orleans Parish Criminal District Court. Bevon wired Bloom the $72,329.77 to pay restitution in the prior criminal case. This fraudulent wire transfer formed the basis of the wire fraud count.

Also in 2008, Bevon engaged in a fraudulent scheme to repurchase her home in Metairie, Louisiana, which was foreclosed on in 2006. In early 2008, Bevon made contact with the real estate company that had listed her foreclosed home. Bevon told the real estate company that she wanted her aunt, Estelle DeSilva, to repurchase the foreclosed home. However, DeSilva was not Bevon's aunt; she was a friend that Bevon had met at a sports bar several years earlier. Bevon told the mortgage company that had listed the foreclosed property that DeSilva would be purchasing the property. Bevon further told the mortgage company that Cercre Spence, DeSilva's daughter, would have a power-of-attorney and would consummate all transactions related to the purchase of the foreclosed property. Spence was also Bevon's friend and neighbor. Bevon went to the Office of Motor Vehicles and fraudulently obtained a duplicate driver's license in Spence's name that included Spence's identifying information but Bevon's picture. Next, acting as Spence, Bevon fraudulently obtained a power-of-attorney for DeSilva.

During the negotiations for the purchase of the property, Bevon used the identity of Michelle Akin, an acquaintance of Bevon's who worked for Omni Bank. Bevon created a fake email account in Akin's name, and represented that Akin was the branch manager of Omni Bank. Using this email account, Bevon sent a fraudulent pre-approval letter via email to the title company indicating that DeSilva had been approved for a home loan through Omni Bank for the purchase of the foreclosed property.

3

No. 14-30324

On July 8, 2008, Bevon attended the closing on the property, pretending to be Spence. Bevon used the fraudulent driver's license in Spence's name, and forged all of the loan documents on DeSilva's behalf. On July 11, 2008, in order to complete the closing on the property, Bevon wired $113,000 from Judge Ellen Kovach's account at Omni Bank, which was managed by Rebowe and Company, to an escrow account at Capital One bank belonging to Title2Land, L.L.C. Bevon accomplished this wire transfer by forging the signature of Rebowe. Rebowe discovered the unauthorized wire transfer in October 2008; shortly thereafter, he restored the $113,000 to Judge Kovach's account.

Following the closing, a closing costs refund check for $5,541.53 was sent by J.P. Morgan Chase to Bevon's grandmother's address. Bevon's grandmother received the check; however, she mailed it back when she saw that it was addressed to DeSilva. Next, the check was mailed to Spence's address, where Bevon was able to retrieve it and deposit it into her personal checking account. Bevon's fraudulent scheme to repurchase her foreclosed home formed the factual basis of the bank fraud count contained in the information.

In addition to the conduct underlying the three counts of conviction, the probation officer reported in the PSR[1] that after Bevon had moved back into her home, she received a pre-approved HSBC Bank USA ("HSBC") credit card. The HSBC credit card had been mistakenly delivered to the wrong address by the postal service and was actually intended for and addressed to Bevon's neighbor, Spence. On July 9, 2009, Bevon activated the card. Using the card, Bevon made fraudulent purchases of beer and other items totaling $2,300 between August and December 2008.

---

[1] Even though the HSBC credit card fraudulent purchases were not charged in the Bill of Information, the PSR describes the purchases under the "Offense Conduct" section of the PSR and lists HSBC Card Services under the "Victim Impact" section.

No. 14-30324

In the plea agreement, the parties agreed that the restitution provisions of 18 U.S.C. § 3663 and § 3663A applied.  The probation officer reported that, for purposes of the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. 3663A, JP Morgan Chase Bank had suffered an actual loss of $5,541.53, HSBC Card Services had suffered an actual loss of $2,300, and Rebowe had suffered an actual loss of $113,000.  The PSR explained that Bevon had a total offense level of 16 and a criminal history category of I, leading to a guideline imprisonment range of 21 to 27 months.

Bevon objected to the PSR, arguing that she did not owe $113,000 to Rebowe because the money had been returned to the company once the foreclosed home was sold.  The day prior to sentencing, the probation officer submitted a letter to the court amending the breakdown of the restitution owed by Bevon.  As an attachment to the letter, Rebowe submitted a statement of loss.  Rebowe stated that it had restored in full the $113,000 that Bevon had fraudulently transferred from Judge Kovach's account at Omni Bank.  Subsequently, a settlement was reached between Rebowe and Company, Omni Bank, and Rebowe and Company's insurance company.  Omni Bank agreed to accept $75,000 in lieu of the $113,000, the insurance company paid $45,000, and Rebowe and Company paid $9,539.15, with the remaining balance being paid with the proceeds of the sale of the property.  Consequently, the probation officer recommend that restitution be ordered as follows:  JP Morgan Chase Bank, $5,541.53; HSBC, $2,300; Rebowe, $9,539.15; Omni Bank, $38,000; and CAMICO Mutual Insurance Company, $45,000.

On March 19, 2014, the district court held a sentencing hearing.  The district court asked Bevon whether she had received the letter from the probation officer regarding restitution.  Bevon stated that she understood the letter and that she had discussed it with her attorney.  The district court adopted the findings contained in the PSR.  The district court stated that when

5

it ordered restitution, counsel should make certain it had accounted for "each item that belongs to the restitution as well as the correct amount." The district court sentenced Bevon to 27 months of imprisonment on each count, the sentence to be served concurrently, and a total of five years of supervised release. The district court ordered that Bevon pay restitution in the total amount of $100,380.68 as specified in the probation officer's letter. The district court broke down the amount of restitution ordered to each entity in open court as follows: JP Morgan Chase Bank, $5,541.53; HSBC, $2,300; Rebowe and/or Rebowe and Company, $9,539.15; Omni Bank, $38,000; and Camico Mutual Insurance Company, $45,000. After announcing these amounts, the district court stated that it was "going to order that the defendant pay that restitution unless counsel on both sides tells me that either those numbers are incorrect, the payees are incorrect, or the total is incorrect." Counsel for both the Government and Bevon agreed that the restitution award was correct.

Following the entry of written judgment, the district court granted Bevon an extension of time to file a notice of appeal. Bevon subsequently filed a timely notice of appeal.

## II.    STANDARD OF REVIEW

The parties dispute whether we should review the HSBC restitution award de novo or for plain error. This court's precedent on this issue is conflicting. We have previously applied de novo review to a claim that a restitution order was illegal, which is the claim that Bevon raises here, even where an objection was not raised at sentencing. *See United States v. Nolen*, 472 F.3d 362, 382 (5th Cir. 2006) ("Nolen . . . contends that restitution is not authorized by that statute. Nolen did not raise this objection at sentencing, but because he is claiming that this element of his sentence is illegal, we review it de novo."); *United States v. Chem. & Metal Indus.*, 677 F.3d 750, 752 (5th Cir. 2012) (applying de novo review to a claim that the restitution award of

No. 14-30324

$2,000,000 "exceeded the statutory maximum" despite the defendant having not raised that objection before the district court); *see also United States v. Chaney*, 964 F.2d 437, 451 (5th Cir. 1992) ("[W]hen the legality of a restitution award is questioned, we review that award de novo.").

Conversely, this court has also applied plain error review to an unpreserved claim that a restitution award was not authorized by the relevant statute. *See United States v. Maturin*, 488 F.3d 657, 660 (5th Cir. 2007) ("This court ordinarily reviews the legality of a restitution order *de novo*. Because Maturin failed to object to either the amount of restitution recommended in the pre-sentence investigation report or the district court's restitution order . . . we review Maturin's claim only for plain error.") (internal citations omitted). Nevertheless, because *Nolen* is the earliest case to address this issue that we have been able to locate, it is controlling. *See Shami v. Comm'r*, 741 F.3d 560, 569 (5th Cir. 2014) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.") (internal quotation marks omitted); *Jacobs v. Nat'l Drug Intelligence Center*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law . . . ."). Therefore, despite Bevon's failure to challenge the legality of the HSBC restitution award before the district court, we will apply de novo review. *See Nolen*, 472 F.3d at 382.

## III.    DISCUSSION

Bevon challenges the district court's order awarding $2,300 in restitution to HSBC. She argues that the award is illegal because Bevon's conduct relating to HSBC did not occur in the course of the schemes of conviction—a statutory prerequisite to restitution. *See* 18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2). However, before we reach the merits of Bevon's challenge, we must first address the Government's argument that because Bevon agreed to the

No. 14-30324

restitution amounts at the sentencing hearing, she has waived her right to challenge the HSBC restitution award.  After a review of the record, we hold that Bevon has not waived her right to challenge this portion of the district court's restitution order.  "Waiver and forfeiture are two different means by which a defendant may react to an error by the government or the district court in the proceedings in a case." *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006) (internal quotation marks omitted).  "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment of a known right." *Id.*  In order for a waiver to occur, the defendant must make "an affirmative choice . . . to forego any remedy available to him." *United States v. Andino-Ortega*, 608 F.3d 305, 308 (5th Cir. 2010) (internal quotation marks omitted).  The mere lack of an objection or an uninformed statement of "no objection" does not constitute waiver.  *See id.* at 308–09.  "[W]aived errors are entirely unreviewable." *Arviso-Mata*, 442 F.3d at 384.

Bevon did not intentionally relinquish her right to challenge the lawfulness of the HSBC restitution award during the sentencing hearing.  The Government points to a statement by Bevon's counsel that "the memo that we received yesterday, I think, was accurate and I discussed that with Ms. Bevon. I believe she agrees to that."  After viewing this statement in context, it is clear that Bevon's counsel was indicating that Bevon's objection to the PSR regarding whether she owed $113,000 to Rebowe was rendered moot by the probation officer's March 18, 2014 letter.  This statement does not indicate that Bevon *intentionally* relinquished her *known* right to challenge the legality of the HSBC restitution award.

The Government also highlights the portion of the sentencing hearing in which the district court stated, after explaining that Bevon's restitution would include (among other items) $2,300 to HSBC Bank, that "I'm going to order

that the defendant pay that restitution unless counsel . . . tells me that either those numbers are incorrect, [or] the payees are incorrect." Although Bevon's counsel stated that he believed the amounts and payees were correct, this does not represent an intentional relinquishment of Bevon's right to challenge the legality of the restitution order. The Government cites *United States v. Conn*, 657 F.3d 280 (5th Cir. 2011), for the proposition that Bevon's repeated assurances to the district court that the restitution amount to HSBC was correct waived her right to challenge the restitution order on appeal. However, in *Conn* this court confronted a situation where the defendant had abandoned a previously made objection. *See Conn*, 657 F.3d at 286. That is not the situation here. While Bevon agreed that the restitution was correct at sentencing, the challenge to the HSBC restitution that she raises on appeal was not raised by the parties or the district court, nor is there any evidence that it was even contemplated. Bevon's counsel's failure to object to the restitution award to HSBC on the basis that it is not authorized by statute, as Bevon does here, does not constitute waiver. *See Andino-Ortega*, 608 F.3d at 308 ("Counsel's failure to object below because he did not recognize the argument now being made on appeal is not a waiver."). Nothing in the record indicates that Bevon knew of the challenge that she raises on appeal and made "an intentional and *knowing* relinquishment" of that challenge. *Id.* Accordingly, Bevon did not waive the argument that she makes here. *See id.*[2]

We next turn to Bevon's substantive argument that the HSBC restitution award was illegal because the purchases made on the HSBC credit

---

[2] Bevon's plea agreement contained an appeal waiver that states that she "[w]aives and gives up any right to appeal . . . any restitution imposed by any judge under any applicable restitution statute." While the appeal waiver "specifically d[id] not waive . . . a direct appeal of any sentence imposed in excess of the statutory maximum," the Government has explicitly chosen to "not address" whether the appeal waiver bars Bevon's appeal here. Accordingly, we do not address the appeal waiver.

card were not made in the course of the schemes described in the bill of information. After a review of the record, we hold that the district court erred when it awarded restitution to HSBC "based on relevant conduct that went beyond [Bevon's] offense[s] of conviction." *United States v. Benns*, 740 F.3d 370, 377 (5th Cir. 2014).

The MVRA provides that the district court shall award restitution to the victims of certain offenses, including those for which Bevon was convicted. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). "The term 'victim' means a person . . . harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). "[I]n the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," a victim includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* In addition, the district court "shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663A(a)(3). The three offenses for which Bevon was convicted each has a fraudulent scheme as an element of the offense. *See United States v. Woodard*, 493 F. App'x 483, 485 (5th Cir. 2012) (unpublished) ("A scheme or artifice to defraud is an element of bank fraud"); *United States v. Arledge*, 553 F.3d 881, 890, 892 (5th Cir. 2008) (mail and wire fraud).

"A defendant sentenced under the [MVRA] is only responsible for paying restitution for the conduct underlying the offense for which he was convicted." *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005). "The general rule is that a district court can award restitution to victims of the offense . . . ." *Benns*, 740 F.3d at 377 (internal quotation marks omitted). Accordingly, this court, relying on the Supreme Court's decision in *Hughey v. United States*, 495 U.S. 411 (1990), has held that a "restitution award can encompass only those losses that resulted directly from the offense for which the defendant was

convicted." *United States v. Espinoza*, 677 F.3d 730, 732 (5th Cir. 2012) (internal quotation marks omitted). However, where "'a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme.'" *United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012) (quoting *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002)). In such a case, "restitution for the underlying scheme to defraud is limited to the *specific* temporal scope of the indictment." *Inman*, 411 F.3d at 595. Furthermore, "the court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." *Benns*, 740 F.3d at 377 (citing 18 U.S.C. § 3663(a)(1)(A)).

The schemes underlying Bevon's offenses of conviction do not include Bevon's conduct involving the fraudulent charges on the HSBC credit card. Bevon's mail fraud conviction was premised on a scheme to defraud that involved an application for a different credit card. The scheme underlying Bevon's wire fraud conviction involved sending a fraudulent wire transfer used to pay a prior restitution obligation. Finally, the scheme underlying Bevon's bank fraud conviction involved the fraudulent repurchase of her foreclosed home. Furthermore, the temporal scope of the mail fraud and bank fraud does not include the fraudulent use of the HSBC credit card, which began in August 2008.[3] *See Inman*, 411 F.3d at 595 (holding that it was plain error to order restitution for "transactions that were not alleged in the indictment and occurred over two years before the specified temporal scope of the indictment"). Moreover, the wire fraud count related to one discrete transaction that was unrelated to the HSBC credit card. Accordingly, because the conduct relating to HSBC was not a part of the schemes underlying Bevon's offenses of

---

[3] The conduct underlying the mail fraud conviction took place in July 2008. The bank fraud scheme began as early as July 27, 2005 and continued through about July 11, 2008.

conviction, it was improper for the district court to order restitution for HSBC. *See Espinoza*, 677 F.3d at 732.

Assuming arguendo that the district court has authority to grant restitution to victims other than victims of the offenses of conviction, the parties must, at a minimum, agree to such a restitution award in a plea agreement. *See* 18 U.S.C. § 3663A(a)(3) (the district court "shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."); *see also Benns*, 740 F.3d at 377 ("[T]he court may also order, if agreed to by the parties *in a plea agreement*, restitution to persons other than the victim of the offense." (emphasis added) (internal quotation marks omitted)); *United States v. Bagley*, 578 F. App'x 343, 344 (5th Cir. 2014) (unpublished) (holding that the defendant's written and oral acknowledgement at the plea colloquy that a restitution award could include victims of conduct beyond the offense of conviction was clear and obvious error in the absence of such an acknowledgement within a plea agreement). HSBC was not a victim of Bevon's offenses of conviction and the parties' plea agreement does not indicate that the parties agreed to include HSBC in the restitution award. Therefore, the HSBC restitution award was illegal. Accordingly, the district court erred when it ordered Bevon to pay restitution to HSBC.

## IV.    CONCLUSION

For the foregoing reasons, we VACATE the portion of the judgment ordering restitution to HSBC and AFFIRM the remainder of the district court's judgment.