# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2025

Lyle W. Cayce
Clerk

No. 23-20602

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

WILLIAM DEXTER LUCAS,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-452-1

_____

Before RICHMAN, WILLETT, and DOUGLAS, *Circuit Judges*.
DANA M. DOUGLAS, *Circuit Judge*:

This case pertains to Appellant William Dexter Lucas's involvement in various schemes through which he fraudulently obtained small-business loans from the government and vehicle loans from private institutions. As part of his guilty plea for conspiracy to commit bank and wire fraud, Lucas waived his right to appeal. In addition to detailing the schemes regarding Lucas's defrauding of private institutions charged in his indictment, Lucas's presentence investigation report ("PSR") discussed allegedly fraudulent social security benefits he had been receiving. At sentencing, the district

No. 23-20602

court ordered Lucas to pay restitution to both the private institutions and the Social Security Administration ("SSA").

Lucas now appeals his sentence, challenging two aspects of his restitution order. First, he challenges the restitution award for his fraudulent vehicle loans, arguing that it was ordered to the wrong victim and incorrectly calculated. Second, he challenges the restitution award for the social security benefits, arguing that he was entitled to the benefits and that this alleged fraud was not part of the same scheme as the offenses in his indictment. We AFFIRM in part and VACATE in part.

I

In early 2000, Bill Lucas met and married Diane Corpian, whose son is Brian Corpian. When Lucas and Diane separated, Lucas started a relationship with Deborah Lucas, whom he later married in 2006. After Diane passed in 2014, Lucas—who claimed he was still married to Diane—took ownership of Diane's house at 20134 Larkspur Landing, Richmond. Lucas, Deborah, and Brian all lived there. The house was also the listed address for Jesus Survives Ministries ("JSM"), a registered corporation organized for non-profit purposes with Lucas as the President, Brian as the Vice President and Secretary, and Deborah as the Registered Agent. Despite both Lucas and Deborah holding themselves out as JSM pastors, JSM held no meetings nor any congregational/pastoral services.

Between 2017 and 2020, Lucas, Deborah, and Brian made false statements and used false documents regarding JSM to fraudulently obtain car loans and loans from the Small Business Administration. An initial nine-count indictment was issued in September 2020, charging the three of them with conspiracy to commit bank and wire fraud, making false statements to a bank, and committing wire fraud. A superseding indictment, filed in April 2022, added more counts and offenses, including money laundering and

making false statements to the Federal Trade Commission ("FTC"). In November 2022, a second superseding indictment was filed, which included all the charges from the previous indictments, with additional counts of witness tampering.[1]

As alleged in the indictment, and included in the plea agreement, the specific fraudulent activities Lucas engaged in were as follows: (1) Between February 2017 and May 2020, Lucas, along with Deborah and Brian, made false statements regarding their payroll from JSM while submitting car loan applications to banks or financial lenders at multiple car dealerships; (2) Between March and April 2020, Lucas made false certifications about JSM's gross revenue on applications for Economic Injury Disaster Loans ("EIDL") to the Small Business Administration; (3) In April 2020, Lucas applied for Paycheck Protection Program ("PPP") loans and included in the applications false statements about JSM's payroll and other activities; (4) Between February and May 2020, Lucas filed, and caused Brian to file, false reports to the FTC claiming that the debts associated with his car loans were due to him being a victim of identity theft; and (5) In July and August 2020, Lucas drafted false affidavits (claiming that Brian falsified documents and applied for the PPP loans and EIDL without Lucas's knowledge), directed Brian to sign the affidavits, and assisted Brian with fleeing to California to avoid testifying in the case against them.

In December 2022, Lucas pleaded guilty to count one: conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349. As part of the

---

[1] The final list of criminal counts is: (1) conspiracy to commit bank and wire fraud (count 1); (2) eight counts of false statements to banks (counts 2, 9–15); (3) ten counts of wire fraud (counts 4–8, 16–20); (4) money laundering (count 21); (5) three counts of false statements to the FTC (counts 22–24); (6) and three counts of tampering with a witness, victim, or informant (counts 25–28). The second superseding indictment also contained a notice of criminal forfeiture.

agreement, Lucas expressly waived his right to appeal his conviction, sentence, or restitution. Regarding restitution, Lucas agreed "to pay full restitution to the victim regardless of the count of conviction." He further agreed "that as a result of his criminal conduct, the victim incurred a monetary loss of at least $50,000" and that "the Court will determine the amount of restitution to fully compensate the victim."

Lucas's various fraudulent schemes were discussed in detail in the PSR. In addition to the schemes discussed above, the PSR discussed an additional fraud perpetrated by Lucas against the SSA that was discovered in early 2023 and not included in any of the indictments or the plea agreement. Since 2018, Lucas had been receiving widow disability benefits based on his marriage to Diane. Lucas applied for the benefits in February 2018, four years after Diane's death. As part of the application, Lucas claimed that he was previously married to Diane and that he was not currently married. The PSR explained that Lucas was not qualified to receive the widow disability benefits because he had remarried Deborah.

The PSR calculated restitution amounts that Lucas was responsible for regarding each of the above-mentioned schemes, with the total amount of actual loss being $410,950.81. Lucas objected to various aspects of the PSR. In relevant part, he objected to the vehicle loans restitution calculation, arguing that (1) the dealerships themselves did not suffer any harm because the loans were funded by financial institutions that were not named as victims, and (2) all but one of the vehicles were returned, so the fair market value of those vehicles should not have been included in any loss calculation. He also objected to the inclusion of the SSA fraud, claiming that he *was* entitled to the widow disability benefits and that, in any event, this conduct could not be included in the restitution order because it was not part of the same fraud or common scheme alleged in the operative indictment.

No. 23-20602

The district court addressed Lucas's various objections during sentencing. On the vehicle loans fraud, the district court agreed with Lucas that if the victims "went on to sell certain vehicles and reduced the amount that they were out on the loan," then it was appropriate to take that into account when calculating restitution. The court gave probation time to recalculate the proper restitution amounts. After assisting with the recalculation, Lucas's counsel agreed with the new restitution amount announced by probation. Lucas's counsel never raised the issue of whether the dealerships were proper victims during sentencing.

On the SSA fraud, however, the district court overruled Lucas's objections. It first found that Lucas's statement to the SSA that he was "not married now" on his 2018 application for benefits was fraudulent because he was married to Deborah at the time. The court further explained that determining whether conduct is part of the same scheme depends on the "level of generality," and here, the SSA fraud was part of the same conduct as the fraud alleged in the indictment because they both involved "false submission to government entities for government benefits."

Ultimately, the district court ordered restitution totaling $286,359.14 and sentenced Lucas to 97 months in prison. Lucas now appeals, challenging several aspects of the restitution order.[2]

## II

We review de novo whether an appeal waiver bars an appeal. *United States v. Leal*, 933 F.3d 426, 430 (5th Cir. 2019). If an appeal is not barred by the waiver, we review legal questions related to the restitution order and the

_____

[2] On June 28, 2024, the Government moved to dismiss the appeal as barred by the appeal waiver. The motion's panel ordered the motion to be carried with the case and expressed no opinion on the merits of the Government's appeal waiver argument.

methods of calculation de novo. *United States v. King*, 93 F.4th 845, 850 (5th Cir. 2024). The amount of restitution is reviewed for an abuse of discretion. *Id.* Moreover, we review any factual findings made by the district court in determining the loss and restitution amounts for clear error. *United States v. Matthew*, 916 F.3d 510, 515 (5th Cir. 2019). But, where a defendant failed to preserve an objection in the district court, we review for plain error. *United States v. Kasali*, 111 F.4th 637, 648 (5th Cir. 2024).

## III

On appeal, Lucas challenges the restitution awards to the SSA for the widow disability benefits and to the car dealerships for the fraudulent vehicle loans. He raises four claims. For the SSA benefits, Lucas argues that the district court erred in awarding the SSA restitution because (1) his conduct concerning the SSA was not part of the same conspiracy or scheme as described in the indictment, and (2) he was entitled to the widow disability benefits. For the vehicle loans, Lucas argues that (3) the dealerships were not entitled to restitution because they are not victims under the statute, and (4) the district court miscalculated the amount of restitution owed to the dealerships.

Lucas contends that these challenges are not barred by his appeal waiver because they fall within the exception for challenges to a sentence that exceeds the statutory maximum. The Government asserts that the appeal waiver forecloses Lucas's claims entirely, and it also disputes his challenges on the merits. We address each issue in turn.

## IV

To begin, an overview of the legal landscape for the interaction between appeal waivers and restitution orders is pertinent.

Though defendants are generally free to waive their appeal rights, we have held that "an otherwise valid appeal waiver is not enforceable to bar a defendant's challenge on appeal that his sentence, including the amount of a restitution order, exceeds the statutory maximum." *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021). That said, this exception is not an "appeal-authorizing escape hatch." *United States v. Meredith*, 52 F.4th 984, 987 (5th Cir. 2022) (citing *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005)). Rather, it only permits an appeal when the district court exceeds "the upper limit of punishment that Congress has legislatively specified for violations of a statute." *Id.* (quoting *Bond*, 414 F.3d at 546). Therefore, when a defendant invokes the exceeds-the-statutory-maximum exception to circumvent an appeal waiver, courts must carefully "consider[] the relevant statute" to determine whether the challenge properly falls within the exception. *United States v. Reinhart*, No. 22-10103, 2023 WL 5346053, at *3 (5th Cir. Aug. 16, 2023). Moreover, because appeal waivers are not jurisdictional, the court may pretermit consideration of that issue if it disagrees on the merits of the defendant's claim. *United States v. Borino*, 123 F.4th 233, 239 n.1 (5th Cir. 2024) (collecting cases).

In recent years, we have analyzed the relationship between appeal waivers and restitution imposed under the Mandatory Victims Restitution Act ("MVRA") and the Victim Witness Protection Act ("VWPA"). Regarding the latter, in *Meredith*, the defendant pleaded guilty to securities fraud and waived his right to appeal any "monetary penalty or obligation." 52 F.4th at 986. The district court ordered approximately $6.8 million in restitution under the VWPA, which the defendant appealed, arguing that the restitution award exceeded the statutory maximum. *Id.* The panel held that the appeal was barred by the waiver. *Id.* at 987. It explained that under the VWPA, the district court could order any restitution "to the extent agreed to by the parties in a plea agreement." *Id.* (emphasis omitted) (quoting 18

U.S.C. § 3663(a)(3)). Thus, because the defendant agreed in his plea deal to an unspecified amount of restitution, to be determined by the district court, the maximum restitution permitted by statute was any amount the district court ordered. *Id.* ("[H]aving agreed to let the district court handle the arithmetic, [the defendant] cannot now complain about how the numbers shook out.")

On the other hand, the MVRA places "statutory limits on restitution awards" that the VWPA does not. *Id.* at 987 n.1. To illustrate, in *Reinhart*, the district court ordered the defendant to pay roughly $40 million in restitution under the MVRA for wire fraud. 2023 WL 5346053, at *1. The defendant had waived his appeal rights but then challenged the restitution award as being based on conduct for which he was not responsible. *Id.* at *2. In upholding the defendant's right to appeal, the panel noted that, although the MVRA grants district courts discretion in calculating the value of a victim's loss, "the district court does not have authority to order restitution *at all*" under the statute "unless the loss was directly and proximately caused by the defendant's offense of conviction." *Id.* at *4 (emphasis in original) (quoting *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012)); *see* 18 U.S.C. § 3663A(a)(1)–(2). The panel distinguished between challenges to a district court's valuation of the loss (which the appeal waiver bars) and challenges to the court's authority to award restitution for that loss in the first place (which is not barred). *Id.* Put differently, a defendant can avoid his appeal waiver only when "challenging the district court's restitution order as exceeding [a statute's] upper limit, rather than asserting a mere error in restitution calculation within that limit." *Id.*

This topic was further discussed in *United States v. West*, 99 F.4th 775 (5th Cir. 2024). There, the defendant pleaded guilty to the production of child pornography and waived his right to appeal. *Id.* at 778. After the district

court ordered him to pay $6,000 in restitution, the defendant appealed, arguing that the district court failed to conduct the requisite proximate-cause analysis. *Id.* The panel agreed, explaining that an order of restitution absent a proximate-cause analysis is an illegal sentence that exceeds the statutory maximum. *Id.* at 780. Additionally, the panel explained that a challenge to the calculation of restitution by a district court that *did* conduct some form of a proximate-cause analysis is precluded by the appellate waiver. *Id.* As such, "an appeal waiver . . . applies if the defendant's argument is that there was a calculation error, but not if the district court failed to conduct the mandatory proximate-cause analysis altogether." *Id.*

In sum, given that restitution orders under the VWPA are not subject to the same statutory limits as the MVRA, if a defendant agrees to allow the district court to determine restitution under the VWPA, he cannot appeal that order as exceeding the statutory maximum. *See Meredith*, 52 F.4th at 987. And under the MVRA, a defendant may only challenge whether the district court had the authority to issue restitution in the first place; he may not challenge the district court's calculations. *See Reinhart*, 2023 WL 5346053, at *4. Further, we have clarified that a defendant cannot challenge the methods used by a district court to conduct its restitution analysis at all so long as the district court performed some sort of analysis; a defendant may only challenge a restitution order if the district court failed to conduct the necessary analysis entirely. *See West*, 99 F.4th at 780.

V

Lucas contends that the SSA restitution was improper because his fraud against the SSA was not the same type of scheme, conspiracy, or pattern of criminal activity as the frauds charged in the indictment. We agree.

As a threshold matter, this argument is not barred by the appeal waiver. The MVRA authorizes restitution to any "victim," which it defines

as "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(1), (2). "Generally, restitution is limited to losses arising from underlying conduct of the defendant's offense of conviction." *United States v. Benns*, 810 F.3d 327, 329 (5th Cir. 2016). However, under certain conditions, the MVRA permits restitution for harms caused by conduct beyond the offense of conviction. Specifically, for an "offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," the statute permits restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," even if that conduct was not the actual offense of conviction. 18 U.S.C. § 3663A(a)(2). In other words, a person can be a "victim" authorized to receive restitution under the MVRA even if they were harmed by conduct beyond the conviction, but only when that conduct was part of the same scheme, conspiracy, or pattern as the conviction.

Here, Lucas challenges the SSA restitution award by arguing that it was not part of the same scheme, conspiracy, or pattern as his conviction. In essence then, he argues that the SSA is not a proper victim under the MVRA. Recall that a restitution award in the absence of proximately caused harm is one that exceeds the statutory maximum. *See, e.g.*, *Reinhart*, 2023 WL 5346053, at *4. And since the MVRA defines "victim" as someone who was proximately harmed by the defendant's offensive conduct, a non-victim necessarily is someone who *was not* proximately harmed. *See* § 3663A(a)(1)–(2). Therefore, it flows from the statute and our precedent that the crux of Lucas's challenge—that the SSA was a non-victim for restitution—is equivalent to challenging the restitution order for lack of proximate cause; it

No. 23-20602

is a challenge that the order exceeds the statutory maximum, and thus is not barred on appeal.[3]

Proceeding to the merits, we find that the district court's order of restitution for the SSA fraud was erroneous. Because Lucas preserved this challenge before the district court, we review de novo. *King*, 93 F.4th at 850. As mentioned above, restitution is generally limited to the conduct underlying the offense of conviction, but the MVRA makes an exception for

---

[3] The Government offers two responses. First, in its motion to dismiss the appeal, the Government states that Lucas's restitution was determined under the VWPA, not the MVRA, and it specifically points to the provision of the VWPA authorizing a district court to award restitution "to the extent agreed to by the parties in a plea agreement." ECF 45 at 8 (quoting 18 U.S.C. § 3663(a)(3)). The Government asserts that this provision—in conjunction with their interpretation that Lucas "agreed to an unspecified amount of restitution" in his plea to be determined by the district court—signifies that the statutory maximum exception is inapplicable. We see it differently. Though the district court never explicitly stated whether it was ordering restitution under the VWPA or the MVRA, the court did state that its award of restitution was "mandatory," which is only true of restitution under the MVRA. *Cf. United States v. Johnson*, 94 F.4th 434, 440 (5th Cir. 2024) (explaining that, while the district court did not specify the statutory basis for its restitution order, by its terms, the MVRA applies whenever the offense is one that the statute ordinarily covers, including "any offense committed by fraud or deceit"). Even assuming the restitution order was authorized by the VWPA, the Government's position relies on a stretched interpretation of the plea agreement by claiming that Lucas agreed to any restitution amount as ordered by the district court without limit. A more accurate assessment is that Lucas agreed that the district court would "determine the amount of restitution to fully compensate the victim." So regardless of the statutory basis for the restitution, it was limited—either statutorily or by agreement—to an amount necessary to compensate the victims.

The Government's second response appears in its appellate brief. There, the Government omits its prior contention that the restitution order was imposed under the VWPA, instead highlighting both the MVRA and VWPA provisions permitting district courts to order restitution to persons other than a victim "if agreed to by the parties in a plea agreement." ECF 61, 36 (quoting 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3)). Nonetheless, this observation is inconsequential, as there is nothing in the plea agreement suggesting that Lucas agreed to pay non-victims. Indeed, the relevant paragraph in the agreement repeatedly references Lucas's consensus to pay "the victim" of his conduct.

offenses that include as an element "a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663A(a)(2). If the offense includes one of these elements, then courts may include in the restitution award any harm resulting from "the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* Here, Lucas pleaded to and was convicted of conspiracy to commit bank and wire fraud, for which "conspiracy" is an element. So the question is whether the SSA-related conduct was performed "in the course of [that] conspiracy." 18 U.S.C. § 3663A(a)(2).

In determining whether conduct is part of the same conspiracy, we focus "on the actions alleged in the indictment and their temporal scope." *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002). For example, in *United States v. Bevon*, 602 F. App'x 147, 153–54 (5th Cir. 2015), the defendant was convicted of mail and wire fraud for fraudulently opening a credit card and fraudulently sending a wire transfer. During sentencing, the district court included in the restitution the defendant's fraudulent activities on a different credit card. *Id.* at 150. On appeal, the panel rejected that this conduct was part of the schemes underlying the defendant's offense because it involved a distinct credit card and occurred a month after the conduct for which she was convicted. *Id.* at 153.[4]

Here, the indictment described the scheme and conspiracy in which Lucas was engaged with particularity. It states that the purpose of the scheme "was for the Defendants to make false statements and use false

---

[4] By contrast, our circuit authorized restitution for harm caused by a defendant when he collided with another vehicle while engaging in a conspiracy for drug possession. *United States v. Gutierrez-Avascal*, 542 F.3d 495, 498 (5th Cir. 2008). But the panel there explained that the harm from the collision was directly caused by the defendant's criminal conduct in the course of the conspiracy, and thus the district court's award of restitution for such harm was appropriate. *Id.*

documents regarding JSM to fraudulently obtain loan proceeds." And it describes the conspiracy as an agreement between the defendants to "execute a scheme and artifice to defraud financial institutions . . . to obtain money, funds, and property . . . by means of false and fraudulent pretenses, representations and promises." The indictment goes on to detail the acts taken in furtherance of the scheme and discusses the different frauds perpetrated by Lucas, Deborah, and Brian, all of which involved falsifying documents about JSM submitted to obtain loans from various financial institutions. The SSA fraud discussed in the PSR, however, was different from the schemes recounted in the indictment in many ways. It implicated Lucas only, it did not involve any false information about JSM, it centered on receiving social security benefits as opposed to money loans, and it was not directed at any financial institution.[5]

In concluding otherwise, the district court stated that because both the SSA fraud and the charged offenses involved false submissions to government entities for government benefits, "at a level of generality, [they are] the same thing." But it is not enough that there be similar conduct at a level of generality. The statute requires that the conduct occur "in the course of the scheme [or] conspiracy," § 3663A(a)(2), and case law instructs that relevant conduct be interpreted in light of the conspiracy or scheme contained in the indictment. *See, e.g.*, *United States v. Stouffer*, 986 F.2d 916,

---

[5] To be sure, our circuit has stated that, when there is a plea agreement, we "look beyond the charging document" and define "the underlying scheme by referring to the mutual understanding of the parties." *United States v. Adams*, 363 F.3d 363, 366 (5th Cir. 2004) (citing *Cothran*, 302 F.3d at 289–90). But nothing in the plea agreement here hints at a broader conspiracy or scheme; it discusses the same conduct, in the same terms, as the indictment. There is no indication from the plea agreement that the parties' mutual understanding was to redefine the scope of Lucas's scheme beyond anything discussed in the indictment. Accordingly, the plea does not suggest that the SSA fraud was part of the same conspiracy or scheme as Lucas's charged or convicted offenses.

928 (5th Cir. 1993). We recognize that the SSA fraud, which began in 2018, occurred around the same time as the offenses listed in the indictment, which occurred between 2017 and 2020. But while temporal connection is a point of focus when assessing whether an action was taken in the course of a conspiracy, *see Cothran*, 302 F.3d at 289, that alone is insufficient in this case where there is no connection between Lucas's claim for SSA benefits and the loan schemes detailed in his indictment, other than that both activities generally involved fraud.

Thus, we hold that the district court erred in concluding that the SSA fraud could be included in the restitution as criminal conduct performed in the course of the same scheme or conspiracy as the charged offenses.[6]

## VI

Regarding the vehicle loans restitution order, Lucas first claims that the dealerships were not entitled to restitution because the financial lenders—not the dealerships—were the actual victims who suffered a loss. We need not parse whether this claim is barred by the appeal waiver, as we find that it fails on the merits. *See Borino*, 123 F.4th at 239 n.1.

First, the argument "is inadequately addressed on appeal." *Lewis v. Univ. of S. Miss.*, 227 F. App'x 340, 341 (5th Cir. 2007). Lucas offers a single conclusory sentence in his opening brief in support of this argument that is "devoid of any factual or legal argument." *Armbruster v. C.I.R.*, 335 F. App'x 473, 473 (5th Cir. 2009).[7] Without more, Lucas fails to "press [his] claims."

---

[6] Given our decision to reverse the district court's restitution order for the SSA fraud on this issue, we need not address Lucas's additional argument that the order should be vacated because he was entitled to the widow disability benefits he received.

[7] The sentence reads: "In his second point of error, Appellant argues that the district court erred in ordering restitution to the Auto Dealerships because it was lenders for the motor vehicle loans that suffered loss."

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014). Moreover, because Lucas is liable for the same amount of restitution irrespective of the victim, any error in the restitution recipient is harmless to Lucas. *See United States v. Okulaja*, 21 F.4th 338, 344 (5th Cir. 2021) ("A sentencing error may be reviewed for harmlessness.").[8] To the extent the district court awarded restitution to the wrong recipient, that error may be corrected under Federal Rule of Criminal Procedure 36. *See United States v. Fults*, 71 F.4th 328, 329 (5th Cir. 2023).

Lucas's second challenge to the vehicle loans restitution order is that the district court awarded the wrong restitution amount because it miscalculated the correct value of several cars that had been repossessed and resold. Here, Lucas does not challenge the district court's authority to order restitution for the vehicle loans, only the specific calculation it reached. Such an appeal—that merely challenges a district court's calculation of the proper restitution amount—does not constitute a challenge that the restitution award exceeds the statutory maximum and is therefore barred by the appeal waiver. *See West*, 99 F.4th at 780; *Reinhart*, 2023 WL 5346053, at *4.

As Lucas's first challenge fails on the merits, and his second is prohibited by the appeal waiver, we see no reason to reverse the district court's restitution order concerning the vehicle loans.

## VII

On the SSA restitution, Lucas's claim that the award was erroneous because it was not part of the same scheme or conspiracy as the offenses in

---

[8] The Government argues that Lucas failed to preserve this objection and so he should be required to show that this error affected his "substantial rights." But because the argument fails even the more lenient "harmless error" test, there is no need to decide whether the objection was preserved.

his indictment is not barred by his appeal waiver and succeeds on the merits. On the vehicle loans restitution, Lucas's claim that the dealerships are not proper victims falls short on the merits, and his challenge that the restitution was miscalculated is barred by his appeal waiver. Therefore, we AFFIRM the district court's restitution award as to the vehicle loans but VACATE the SSA restitution award. The Government's pending motion to dismiss is DENIED as moot.